Good morning, and may it please the Court, I'm Dominic Dre, and I represent the appellant, the GEO Group. I will try to reserve at least three minutes for rebuttal. For at least two centuries, Congress has allowed federal officers to remove cases to federal court. And the with popularly elected judges. That's been true since the founding. It was true through the enforcement of prohibition, through the civil rights era. Today, federal immigration policy is unpopular with Washington politicians who, as this Court just in the last year in United States v. King County, that's the Boeing Field case, noted, are perfectly happy to target federal contractors. So the GEO Group removed this case to federal court. And no one questioned that removal. The Department didn't seek to remand it. But the district courts, who esponte remanded the case, and in so doing, made a number of errors, including involving the legal standard for federal officer removal under 1442A1, and also on the three supremacy clause doctrines at issue in this case. Start with the easiest of these, which is the standard for federal officer removal, which is incredibly forgiving. A removing party doesn't have to win the case on removal. It just has to state a colorable federal defense. That by the way, was the only prong on which the district court ruled against GEO. And it rejected the notion that any of these were credible, or colorable, excuse me. And moreover, faulted GEO, and this is at page 12 of the appendix, or of the excerpts rather, where it says that by seeking, or filing a motion to dismiss based on failure to join a necessary party, that that somehow conceded that the three doctrines at issue on removal were frivolous. That alone is a clean basis to reverse and send us back, but. What would we send you back to? Back to the Western District of Washington. I guess that's, yes. But that inference was unjustified. There's no authority for that proposition that you have to move on one of the three grounds that you cite in your removal papers. Is your claim based on derivative sovereign immunity? Yes, your honor. That's one of three. Derivative sovereign immunity, intergovernmental immunity, which was the one in the Boeing, that was the doctrine that did the work in Boeing Field. And then preemption, of course. And so I'm happy to walk through those. Well, let's start with that one. What evidence is there that some official of ICE directed the GEO employee to exclude the other side? Yes. ER 74, your honor, is the sworn affidavit that explains that, I believe his name is Jeff White, the ICE, the local person in charge, came back to the area where the inspector and my friend on the other side were waiting and advised them that ICE was denying access to the facility. GEO, and this is in the excerpts a few pages prior, GEO only took a form and ran it up to ICE. That's the only GEO employee who's involved in this saga. And it's worth bearing that in mind, because this is a facility that has exactly one client. Bill, let me just stop there, because if Washington shows up, we're here for health reasons or health inspection, and the person at the front desk says, yikes, runs it, maybe, runs it up. And then we have White. And did White, is it White who basically says to the Department of Health, no go? Yes, literally, it is White who says this. But then, but White doesn't say to GEO, do this, do that, right? I mean, White's... He just asks White what he wants to have happen. Because, and probably the most important page in the... So isn't that, in a way, kind of fatal to this idea of derivative sovereign immunity? Because if the White is talking to the Department of Health and not to GEO, you see, I think we're missing something. Not quite. So your Honor is articulating perfectly why this is a 12B7 dismissal. For failure to join a necessary party, namely ICE. And because ICE is immune, under Philippines versus Pimentel, the case gets dismissed. Okay. So that's that. There's a lot of moving parts in this case, but we'll stop on the necessary party, which the district court didn't rule on. And I know that you had a motion on that, which was terminated, or that was the... Anyway, that was the terminology used. It was terminated. So is that a threshold question that you think should have been decided in the first place by the district court? Yes. That is a basis for dismissal that the district court should have reached. He didn't. And when we get back down in the district court, we will re-urge it, of course. This court can decide it on appeal, of course. As to your Honor's question about the derivative sovereign immunity issue, the court ruled against us on the first prong of that doctrine, as articulated by the Supreme Court in Uresley, which is the canonical 1940 case. The first prong asks whether what was done was within the constitutional power of Congress to authorize. And the district court swung and missed on that and said, well, because Congress hasn't adopted a statute requiring you to deny access, that means that it fails Uresley's first prong. But look at Uresley. It's pages 20 and 21 of the Uresley decision, where the court says what was done was within the constitutional powers of Congress. Not that Congress did so by statute. Shoot, in Uresley itself, Congress didn't require them to use... It was a paddle wheel they used to erode part of the river. Congress merely passed legislation saying improve the navigability of these various rivers, and then what I think was the precursor of the Army Corps of Engineers approved the use of the paddle wheel. So even in Uresley itself, it's not statutory. The same error appears again and again throughout the court's The PBNDS, that's this long, long document of which we have some in the excerpts, but the PBNDS requires preclearance approval. The contract requires preclearance approval as well. That's at ER 39. And the district court says, well, that can't have intergovernmental immunity effect because that instruction didn't come from Congress. But this court's canonical case in Boeing versus Movisagi, and then the more recent case of United States versus King County, none of that is statutory. So the district court is simply not correct in what it requires for these supremacy clause doctrines. And if you stop and think about it, this makes sense because the government runs an incredible amount of operations. These doctrines don't even just apply in immigration. They apply for contractors of all stripes, health care, IT security. It all runs the gamut of government functions. And so, of course, you can't require Congress to have adopted each and every rule that the federal agency imposes on its contractors. So for those reasons, you have legal error below. Well, then there is a question, and this does permeate other aspects of the potential defenses, and that is that there's contractual language that the contractor, that's you, GEO, shall operate and control all designated points of access and egress on the site. So how is that Mr. White's direction given within his authority if that actually is the contractual provision? I understand Your Honor's question now. Okay, so ICE directs GEO to maintain the security, operate the, I forget the exact language, but to operate the entry points. GEO does that, but there are more details about how you perform that task. Admitting someone in or following ICE's protocols for how people get admitted is merely one way in which you man the front desk and assure security. So when people arrive who are approved, who are pre-cleared to come in, attorneys, family members with scheduled appointments, the various health inspectors whom GEO has pre-cleared, or ICE rather has pre-cleared to come in, GEO lets them, there's no consult with ICE necessary in those circumstances. So the direction is to GEO to run the security of the facility, including its points of entry. And then the way in which you carry that out is by enforcing, and this is the language, it's ER 39 paragraph T, which requires pre-clearance for access to ICE facilities. Contrast that, Your Honor, with RCW 4370-170, which says, quote, free and unimpeded access to all buildings. And quote. So there you have the conflict, you know, view it through preemption grounds, view it through derivative sovereign immunity grounds of contradicting the direction, view it through intergovernmental immunity of trying to regulate how the contractor performs the federal function. Doesn't really matter. There you have a conflict between what the state says, free and unimpeded access, and what ICE is saying, the federal government is saying, which is pre-clearance approval. So what's a contractor to do? If the facility had been run just by the federal government, suppose that the Washington Department of Health decided they were going to take a look at the health facilities at Fort Lewis, and they went down and sought access unannounced to Fort Lewis. Obviously the Army would refuse access, and there wouldn't even be a case. There'd be no question that they can't force the federal Here, the only difference is that the government has chosen to use a contractor, and this court, citing the Supreme Court in Goodyear, excuse me, in, yeah, Goodyear Atomic Energy, makes clear in Boeing, quote, the federal government's decision to hire Boeing, in this case, GEO, to perform its cleanup work, in this case, detention, does not affect the legal analysis. That's at page 839 of the Boeing case. And that's, that's sort of the beginning and end of the case. If, if the feds had been running this facility themselves, the state couldn't possibly demand free and unimpeded access. They've chosen to use a contractor, and this court's decision in Boeing's, you know, the end of that, of that inquiry. So I- Does it, does Mr. Weitz's authority, oh, go ahead, Judge Wittler. Sorry, I just, maybe you can help me out with another part of your contract. It says, the contractor shall comply with all applicable ICE, federal, state, and local laws, statutes, regulations, and codes. If there's more than one reference, the most stringent requirement shall apply. And it doesn't say federal law or this contract shall, shall apply. So I'm wondering why it isn't the case that the most stringent, that is the law in Washington that requires access, doesn't apply here. Yes. So that is something that our friends on the other side have argued on appeal for the first time. It was not the basis of the district court's decision. But there are four reasons, frankly, that that doesn't do the trick. The first is the contract itself. That, that language is in paragraph P on ER 39. I found this under sanitation and hygienic living conditions, which is why? Okay. That's, that's fine. I'm sorry, did you say why, Judge Wittler? Yeah, it says why, something why. And it's on page ER 83. Okay. It says exhibit 83, but it says SCR supplemental. Okay. That's the, that's the department's SCRs. I know ours, and it's ER 39, where I'll call the court's attention to. Okay. P, P has that line. Your Honor's reading the language exactly right. Where it is, is not particularly important. The contract then prioritizes the PBNDS. That's paragraph J. It requires pre-clearance for facilities. That's paragraph T. All of which, plus the specific controls the general, tells us that pre-clearance for access to the facility is the specific rule. It's also required in the PBNDS, and that has priority over this document, per paragraph J. So that's just a- So pre-clearance is the role. So is the problem here is that the Department of Health for Washington State didn't get pre-clearance? Yes, they have to get pre-clearance from ICE. Now that would change, that would change its analysis. If ICE- ICE or from CO group? From, from ICE. They didn't get it from anybody, so I guess that's an easy, an easy answer. The question is, where does it say they have to get it from ICE? I think if you consult the PBNDS, it makes clear that it comes from, from ICE. But again, in this case, they got it from no one, so it's a fairly easy case. The other reason, though, that that language is- It makes a difference to who the federal officer is in this case. No, it doesn't. Because contractors under IGI, you know, again, I read that language from Boeing. Contractors are treated the same as the federal government when it comes to carrying out the I thought what Judge Wardlow was alluding to, and if not, then I'll allude to it, and that is, doesn't it matter what the authority of Mr. White is? I mean, he is the ICE- I forget his precise title, but he is the person on site who has the ability to give the pre-clearance, Valmon. Well, where do we, where do we derive that from? I mean, I guess we could present that when we're in front of the district court, but have we raised a colorable argument that the guy who's the director of the facility said you can't come in? Yes, of course. So, you know, remember, the record here is rather lean because of the posture, a sua sponte remand. So I, I want to, you know, sort of bring the court back to that point. The other response to Judge Wardlow, because I don't want to short change it, so it's an important issue. Precedent also answers why that language doesn't control, because verbatim, the Supreme Court in Leslie Miller versus Arkansas and this court in Gartrell have addressed a contractual requirement that says applicable law, that you have to comply with applicable law. And the Supreme Court said, as did this court, that a statute cannot be applicable nor compliance with it necessary if it violates the supremacy clause. So you, it sort of begs the question to say this is to assert that it's an applicable law, because it's only applicable if it's constitutional. If it, if, as applied, by the way, because in this posture, we are the defendant and it's an as applied challenge. So, so it has to be constitutional as applied in our circumstances, and that is to say complies with the supremacy clause. Because it doesn't, for any of these three reasons, DSI, derivative sovereign immunity, intergovernmental immunity, or preemption, it can't be an applicable law. And so Leslie Miller and Gartrell, which we cite throughout the briefs, sort of close that, close that loop. With that, I'm happy to field questions. I have a few. Great. And well, let me talk about the direct regulation issue. Well, first of all, you've got the, you're claiming derivative sovereign immunity and a colorable claim to that. Then you have the direct regulation. So my question on the direct regulation is whether the ICE employee has this authority under Boeing. And he's giving a verbal directive that's overriding, in effect, a contractual term. So just, and they keep talking in the contract about the contracting officer being the big kahuna in the relationship between the government and the contractor, in this case, GEO. And he's not the contracting officer. So how does he have authority to, in effect, override what the contract says without the contracting officer? So, so I think there's kind of a fundamental disconnect here, which is no one is changing the contract or trying to override the contract. The contract requires preclearance. So all we're doing is enforcing that requirement. Now, if he were trying to change the contract, that would, that would be a different, a different matter entirely. And I don't frankly know what his role is, if he would have that power. I doubt it. But all the business about the contracting officer goes to contract formation and amendment. There's no formation or amendment issue here because all we're doing is following the rule that requires preclearance. That rule appears both in the contract and in the PBNDS. And the way that that maps onto Boeing, which I really think, candidly, this is probably the easiest way to deal with the case, is as a direct regulation case. The way that it maps onto Boeing is that in Boeing, you have the Atomic Energy Act, which says, I believe, the safe disposal of nuclear waste. It requires the safe disposal of nuclear waste. Here, the statutes, there are many of them, but the various immigration statutes require appropriate places of detention. I believe that's 8 U.S.C. 1231G, appropriate places of detention. So the statutes in both instances are a bit on the vague side. And then you have regulations promulgated by the agency, in this case, ICE, in Boeing, the Atomic Energy Commission and the Department of Energy. And then they get implemented by the contractor carrying them out. And where things become problematic at a supremacy clause level is where a state purports to tell the federal contractor how to perform the federal function. So in this case, if the federal function includes access to the facility, which is specifically what we're talking about, if a state purports to tell GeoGroup how to manage access to the facility, that's like the state of California telling Boeing how clean to get the dirt. And in those cases, the federal rule has to prevail. And the intuition is, again, pretty clear because from the founding, the government has relied on contractors to carry out its work. And if it did the work itself, it would doubtless be immune to regulation. And so all that Boeing and Goodyear versus, Goodyear Atomic versus Miller, all that, and Newsom, this court's en banc decision in Newsom, all they do is recognize that where the government is using a contractor, the same rule applies to the contractor. And so here, again, the function is what are we going to do for access to this facility? And you have the PBNDS and the contract saying one thing, and state law saying free and unimpeded access, and those are just at loggerheads. So there are probably a million ways around it, including requesting preclearance from ICE, which the other side hasn't done. There is, by the way, I mean, 6 U.S.C. 205, the immigration ombudsman law, which if the court the ombudsman, unfettered, unannounced access to facilities. So there is a check on contractors. They are subject to unannounced inspections to make sure that things are going smoothly. It's just done by the federal government, because the feds have decided that on this, they're going to keep it in-house. So I have a couple other questions, and that are kind of in a different box. You started out talking about standard of review and not wholly frivolous. And I want to ask the other side really the same question, because that's kind of the defiori statement that you've referenced. The preponderance of the evidence standard, which is articulated in El Saldana, do you see that those two are reconcilable, or do you see that those are two different standards? I think they are different at this procedural point in the case. Although, candidly, I haven't thought deeply about it. But if you consider an analogy to, like, diversity jurisdiction removal, things can later emerge that might cause the court to reconsider it. But if it's pled, colorably pled, that the people are of diverse citizenship, there's no forum defendant, and the amount in controversy is over 75 grand, you're in federal court. And you wouldn't necessarily have a preponderance inquiry in that. So here, it's the same thing for federal officers. In fact, if anything, it's probably more deferential. The Supreme Court's discussion in Willingham, where it cautions against a grudging, narrow construction of the statute. And then it goes on to say, immunities are actually the most important thing to get into federal court, because immunity is from suit. That's a very valuable thing. So things like derivative sovereign immunity, and intergovernmental immunity, those belong in federal court, under the most forgiving possible construction of the law. But I mean, if it, I guess, at some future date, if it turned out that GEO wasn't actually working for ICE or something, which is sort of hard to imagine, but if that emerged, I guess... That's mostly who they do work for. Yes. And as I was saying, there's only one client at this facility. It's only ICE. So another kind of procedural question, you alluded to this whole thing about the indispensable party or the Rule 19. So if we were to determine, if we were to affirm the district court's order, so you would be back in state court, and you would then play out the necessary party. And if it was a necessary party, but it wouldn't be feasible to join, then... Then Pimentel should take over. Pimentel would take over. Yeah. I think it should be the same answer in state court. And then if we were to reverse the district court and say there's some colorable ground, or by some preponderance, something was shown, then you'd be... You would then have to deal up front with the necessary party issue, correct? I think, procedurally, I haven't really encountered this, but I think it would un-terminate our pending motion under 12B7. I'm just trying to look at the practical... Yes. No, I think Your Honor is right. ...ways to think about it. That's exactly right. Okay. But I do want to take a moment just to note, the fact that we should win in Thurston County Superior doesn't change the right to be in federal court...  ...as the court knows. All right. Any other questions now? Thank you. I think I'm just at my time. Well... Thank you. You need a new clock.  May it please the court. Marcia Chen for the Department of Health, and I'm joined by Christina Sepe and Andrew Hughes. The state's power is at its apex when it regulates the health and safety of its residents. GEO believes it is entitled to a federal forum, but every federal forum in this circuit has expressly rejected the exact federal defenses that GEO asserts now. The district court below, when considering an equivalent workplace safety law, two different panels of the Ninth Circuit in Noisier, considering its state minimum wage law, and another in USV, California, considering a state inspection law no different from the one here. And an en banc panel in Newsome, all have concluded that GEO's federal defenses hold no water as against a generally applicable health and safety law like this one. The district court correctly remanded to state court. And I'd like to start with Judge McEwen's questions about the evidentiary burden. At this stage, GEO bears the burden of showing that federal jurisdiction is appropriate. GEO bears the burden of showing its defenses are tolerable. And where the Department of Health makes a factual attack on its jurisdictional allegations, i.e. whether or not ICE approval is necessary for state health inspections, GEO bears the burden of showing by preponderance of the evidence that ICE approval is necessary. GEO does not meet that burden. Can you speak to the preclearance?  Because if the state had asked for a preclearance and they'd granted it, we wouldn't be here.  And if the state had asked for a preclearance and they had refused it, then we would be here. Yes, Your Honor. The point is there is a 20-year history that GEO doesn't even refer to where state, local health inspectors have access to a coma detention facility without ICE approval. That has been put forth in the record by the department, including weeks before the Department of Health sought access here. GEO allowed the Labor and Industries inspectors, July 1st, two weeks before the Department of Health inspectors into the same facility. And the declarations from LNI's inspectors that there was no, it was unannounced and there was no pre-approval required by ICE. On a preponderance of the evidence standard, GEO must put forth more evidence than it has. GEO hangs its hat on what is essentially a distorted citation to the federal contracts table of contents. That's ER 39. There it says that ICE pre-approval is necessary, or I'm sorry, pre-approval clearance is necessary for access to ICE facilities. This is not Fort Lewis. This is a GEO-operated and GEO-owned facility. It is a private detention facility. It is not a federal facility. And the NUSA makes clear that there is considerable room for generally applicable state laws to apply to a private contractor such as GEO. But going back, even if you look at, so even if you look at that provision of the table of contents of the federal contract, which says pre-clearance access is required for ICE facilities, that's obviously not GEO. But even if you look at the rest of the 100-page contract, it makes clear in 1 S.E.R. 118 that that pre-clearance is only required for access to the government-required portions of the Tacoma facility. And I can make a quote. 1 S.E.R. 118 says government staff, i.e. ICE, will have full access to all areas of the facility. Contractor access to government-required space must be pre-approved by the contracting officer, which Your Honor has already noted has the real authority to manage the contract, not Jeff White. In addition, the Department has put forth plenty of evidence, and I think Your Honor has already flagged 1 S.E.R. 110, where it says that the contractor has full access to the Tacoma facility, or has full control to operate the points of entry and points of exit of the Tacoma facility. And GEO, again, stipulated with a different agency, the Labor and Industries, months before this case, to allow permanent access for unannounced inspections by a different state inspector. Why the change in position? Why, GEO? That probably is a question better directed at GEO. But for certain, there's enough evidence in the record here to show that GEO has had the discretion and has exercised its discretion to allow inspectors into the facility. Sounds like the other department sought pre-clearance. No. They sought approval for future unannounced visits and obtained it. No, Your Honor. That's not pre-clearance? No, Your Honor. If we're counting a district court ordering unannounced inspections, which is what the LNI district court decision is, if we're counting that as pre-clearance, certainly, and the Department of Health has certainly done the same here. It has sought a preliminary injunction for access into the Tacoma facility. And I'd like to point out, GEO is making a big stink about the fact that the district court relied on its failure to include these federal defenses in its motion to dismiss. But there's other reasons to think that GEO also doesn't believe its federal defenses are tolerable. That would be that it never appealed the LNI district court order. The LNI district court order considered a state law that is essentially the same. It allows for LNI inspections of any workplace. GEO didn't appeal that order. Yeah, I'm having a little trouble, though, computing the strategic decision on, in one case, to somehow act as if that is somehow res judicata or something. It's not res judicata, but it certainly goes to the suggestion that GEO is asserting its federal defenses, and it doesn't believe it's material either. And that makes a lot of sense because every single defense that GEO asserts have been rejected by the Ninth Circuit or other courts. I do agree with counsel that if they have a defense, probably the best colorable defense is potentially the direct regulation. And so my question is, it does seem that ICE has control over some part of this facility, right? Maybe you don't want to look at that part, but they have some control.  But then if they were asked admission to look throughout the facility, wouldn't there at least be jurisdiction for the court to determine, well, you should let them into the office, or Mr. White has authority to say you can or cannot come into this little portion. I mean, there is some retained authority of the federal government, isn't there? Not in the facts that the GEO has presented right now. The facts currently is that the Department of Health sought access to the facility at the point of access and egress that GEO controls, not at the doors of the ICE administrative offices, which is at the second floor. It's on a different portion of the facility. It's at the access and egress points that GEO controls. In terms of the direct regulation defense, I would note that the generally applicable law here is different from United States versus King County. United States versus King County involved a law that specifically targeted federal immigration policies and had politicians verbally stating that is the reason for the state law. Here, RCW 43-170 is a generally applicable law, and the Department of Health is responding to hundreds of complaints about the contaminated food, about the brown water, and the dirty laundry. To suggest that a private detention facility owned by a private contractor has no obligation to allow a state health department to inspect public health concerns is not colorable. And GEO repeatedly points to Boeing, and I would point the court to NOISAR, which is the Ninth Circuit's most recent decision, which expressly rejected Boeing's application to the same exact facility because the PBNDS is not a federal regulation. It is not a federal regulation at all. And even if it were, it is clear from its plain text that ICE believes and invites state cooperation in its operation of the federal facility. And I can point the court to two different citations. Two, SER 239, which is the introduction to the PBNDS, and it specifically says that ICE, with state and local governments and all of our stakeholders, look forward to reforming the detention facility. It contemplates a role for state inspectors. Another citation is two, SER 490, and this is actually GEO raised this in its own reply, which says an independent external inspector shall conduct annual inspections to ensure that the food service facility and equipment meet governmental health and safety codes. Nothing in there suggests there's any pre-approval required by ICE. This is all authorized both by the contract and the PBNDS that suggests that state and health inspectors have a role in managing the conditions of the facility. That's both from the contract as well as from the PBNDS. I want to make sure I clarify a point that Judge Wardlaw had. GEO cites to ER 39 regarding which standards should prevail if there's any conflict. And GEO's own counsel suggests that the specific controls, the generic. The specific is the citation that Judge Wardlaw cited, which is that one, SER 114, which refers to sanitation and basic hygiene, and it says that the most stringent shall prevail, which is the state law. GEO, again, cites effectively the table of contents of the federal contract, which is ER 39, that suggests that the PBNDS prevail. But if you read that actual provision, that provision is clearly referring to other standards, not state law. It's referring to the American Corrections Association standards, and it says that the PBNDS will prevail. So those distorted citations to the contract are not enough to show by a preponderance of the evidence that the factual basis for GEO's jurisdictional allegations are true. In fact, they are not. And the department has repeatedly refuted that and put forth a mountain of evidence to indicate that the federal government is not directing GEO's actions. It is GEO who made the decision, and GEO who has the control and access over its own facility. So let me ask you a question that is similar that I asked to Mr. Drave, and that has to do with the indispensable party determination. Is that something we could review that de novo? Of course, it's a legal issue. Is that something that we should look at? And would that change the calculus? What if we were to rule that ICE is an indispensable party? No, you should not reach that issue because we haven't had a chance to brief it at all. So should we remand to the district court? No, Your Honor, because that's a question and a motion that could be heard by Thurston County Superior Court, just as you identified earlier. That's certainly within the realm of possibility that a state court could consider. But that doesn't actually give me a good reason as to why the federal court shouldn't consider it first, since ICE is a fairly prominent federal agency or sub-agency. The standard for colorableness, Your Honor, I agree it's a low one, but it is a real one. And that is confirmed by Mesa v. California and the Supreme Court. The Supreme Court held that just because you have a federal employee, or in this case, a federal contractor, that's not enough for federal officer removal. You have to have a legitimate defense. And here there is no legitimate defense. And there's a myriad of cases where the Ninth Circuit has found that derivative sovereign immunity and similar arguments that GEO is making here are not colorable. Cobolse is a federal officer removal case, which found that those defenses were not colorable. Sounds like what you're saying is that they don't have a defense that can win. No, Your Honor, we're saying their defenses have been expressly rejected. So it's clearly established that there's no colorable defense that GEO can make here. In fact, United States v. California, Noisar, Newsom, all of them have already suggested that GEO's defenses hold no water. And in GEO's position, it's no matter— What about the direct regulation? What do you think is the best case that you can cite to say there's no colorable defense, following up on Judge Hawkins' question? Two different cases, Noisar, which addressed the direct regulation defense and expressly rejected it, as well as Newsom, which stated that there's, quote, considerable room for generally applicable health and safety laws to apply to federal contractors, that there is a difference between the federal government and the federal contractors. And here, there is no replacing of federal standards as there was in Boeing. In Boeing, there was some replacing of federal standards. Here, there's no replacement of federal standards. The PBNDS itself believes the state law applies. The contract believes that state law applies. So there's no direct regulation of the federal government by a state law that says that any place may be inspected. I just want to make sure that I also touch on what GEO could have done. You know, Jeff White, an ICE employee that has no authority to change the contract, told the Department of Health that they were not allowed access. And GEO's suggestion is that, well, state law, Jeff White's word is the magic wand that wipes away state law. That can't be. A single federal employee's statements can't wipe away state law or shut down state regulations. If that were true, Jeff White could tell GEO that it doesn't have to pay state taxes, doesn't have to pay state building codes. So it's not magic. Jeff White's position or Jeff White's words. GEO could have done a number of things in that situation. GEO could have told the ICE employee, actually, our contract suggests that we have to let them in. GEO could have told, could have contacted the contracting officer and said, what are our obligations here? It suggests that we might need to allow state health inspectors as, you know, state health inspectors in this instance. Or GEO could have done what it's done for 20 years. It could have allowed the state health inspectors into its facility just as it has, without ICE approval, just as it has for 20 years and two weeks beforehand. I see that I'm out of my time, but I want to make sure that I say that the district court's opinion should be affirmed. The state, the GEO's attempt to evade state oversight of its private detention facility is not colorable. Thank you. We went a bit over time before, so we'll give you two minutes for rebuttal. Thank you. A few quick things on rebuttal. The first is, there was a lot of discussion trying to parse the PBNDS to say that it doesn't actually require preclearance and that everyone was wrong, except for the people who are not party to that. First of all, the things that the other side cites for other regulators having access, PBNDS at 21, drinking water. Inspections are required by the federal government, performed by a local water department. So we have a contract for that. That's true. And the contract says they can come unannounced. So that unannounced visit is, as a matter of speaking, pre-approved because it's, we cite all these in the opening brief. 249, PBNDS at 249 requires inspection of food facilities. Visitation for families and lawyers is at 393 of the PBNDS. So we're not actually letting people in left and right without government approval. And that should come as no surprise. Additionally, if the party's intent for this contract matters at all, the United States filed an amicus brief on our side in Inslee and said, we don't read this applicable laws thing to waive the supremacy clause and allow Washington to come in unannounced. Let me also say a word about precedent. Nuwazar has a petition for rehearing on Bonk pending, as the court probably knows. California, that in that instance, the United States conceded it's a preemption case, conceded the presumption against preemption applied. We make no such concession. I don't know why the federal government did that. And then Newsom is our case. Look at page 750 and its environment in Newsom, where it talks about the use of contractors and the intergovernmental immunity defense. That's just fine with me. And then on King County, the other side cited some language about discrimination, but there are two prongs to intergovernmental immunity. So King County found both discrimination against the federal government and also direct regulation. So if you look at the relevant half of that opinion, it makes it clear that direct regulation is still in effect even without discrimination. And then on the 12B7 thing, I'll just call the court's attention to, we cited in the opening brief, the Supreme Court's recent decision in BP versus mayor and city council of Baltimore, which says the entire remand order is reviewable. And because we were faulted in that remand order for the 12B7 motion, it is absolutely properly before this court. And the other side has not only had a chance to brief it, but did so in their answering brief. Thank you. Any further questions? Thank both counsel for argument. Very interesting case. Thank you also for the very complete and thorough briefing here. The case just argued. Washington Department of Health versus GEO Group is submitted and we're adjourned for the morning. Thank you.
judges: McKEOWN, HAWKINS, WARDLAW